## No. 10,273.

### CHARLES MACREADY AND NICHOLAS BURKE, EXECUTORS, vs. CHARLES H. SCHENCK, ET ALS.

A bond furnished by a surviving partner is a *legal* bond, required under a provision of law.

Suit may be instituted against the sureties on the bond of such partner, appointed to liquidate the affairs of the concern, *without* previously taking steps to enforce payment by the principal. Such condition precedent is not exacted in such case.

The appointment of a liquidator to settle the affairs of a partnership, in which the succession of a deceased partner is interested, produces legal effects, although annulled on appeal.

The terms and conditions of a law, in furtherance of which a bond is taken, must be read into the bond.

A bond furnished by a liquidator to the *judge* of the court in which the succession of a deceased partner is opened, must be read as given in favor of the succession representative, who has a right of action upon it. in case of breach, against the surety therein.

Sureties cannot escape responsibility when the bond signed by them has served to obtain possession of property, not subsequently, on due demand, properly accounted for. Signing such bond is not an idle or vain formality.

A judgment against a principal on a legal bond. is *prima facie* evidence against the surety therein, to show breach of contract and liability; but adverse proof is admissible.

The position of a liquidator of a partnership, in which the succession of a deceased partner is concerned, can be assimilated to that of a succession representative, whose acts are valid, although, on appeal, the appointment is rescinded.

Although the appointment may not protect the liquidator, against the commission by him of illegal and fraudulent acts, it may shield third persons and among these the sureties, when they are not amenable to the charge of conspiracy.

Sureties on a legal bond are responsible only for the assets which came to the possession of the principal in his official capacity, or for the value of the same, after proper deductions.

Whatever may be the authority of an appellate court to investigate and adjudicate upon intricate matters of fact, not considered and passed upon by the court of first instance, it will not, as a *duty*, undertake an onerous examination of the same. in all cases, but will. in its discretion, remand the controversy for further proceedings.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*T. J. Semmes & Legendre; Thos. Gilmore & Sons* and *J. Ad. Rozier* for Plaintiffs and Appellants:

1. Article 3066 of the Civil Code only applies to sureties on the bonds of curators, administrators, executors, tutors and syndics; it does not apply to sureties on the bonds of liquidators of partnerships, because not named in the exceptional legislation, and such bonds are ordinary civil obligations. Walmsley vs. Mendelson. 31 Ann. 157.

Executors vs. Schenck et als.

2. Although the liquidator's bond in this case is made payable to the judges of the Civil District Court, when it should have been in favor of the plaintiffs as executors, the mistake does not affect the right of plaintiffs to sue on the bond. 15 Ann. 465; 32 Ann. 384; 106 U. S. 152; 7 Excheq. 378; 64 Calif. 213; 2 J. J. Marshall, 472; 8 Shiply, 468; 3 Dev. (N. C.) 86; 4 Dev. 268; 6 N. H. 88.

3. Although this court decided, in 35 Ann. 600, that Klotz was not legally appointed liquidator, neither he nor his sureties can raise the objection. Slawson vs. Kerr, 29 Ann. 295; 7 Ann. 121; 2 La. 42; 35 Ann. 521; 40 Ann. 237; 9 Grattan, 321; 50 Ala. 315.

4. The surety cannot plead any defence, inherent in the obligation, which the principal cannot plead. 10 Ann. 385; 10 Ann. 666; 39 Ann. 293.

5. Hence the surety cannot set up the unconstitutionality of the law under which the bond was given. 6 N. S. 123; 3 N. S. 595; 4 N. S. 21; 5 La. 500; 1 Gill, 302; 30 N. J. L. 73.

6. The surety on the bond of a trustee, irregularly appointed by the Court of Chancery, cannot question, in a suit on the bond, the validity of his appointment. The court being competent to make such appointment, its exercise of the power cannot be questioned collaterally. The trustee got possession of the trust estate under the proceeding by color of which he claimed to be trustee, and his surety voluntarily undertook that the trustee should faithfully administer the trust. Neither the trustee nor his surety can be permitted to deny his liability as such. People vs. Norton, 9 N. Y. 176.

*P. E. Théard & Sons; A. L. Tissot; W. S. Benedict* and *Buck, Dinkelspiel & Hart* for Defendants and Appellees:

Security given under an order of court is judicial. 3 Ann. 42; C. C. Arts. 3064, 3035; Pothier, Obligations, Vol. 1, Part II, Chapter VI, Sec. 2; Zachariæ, Droit Civil, Vol. 3, Sect. 425; Marcadé & Pont, Vol. IX, Title XIV, page 1.

A surviving commercial partner, who is appointed by the court to liquidate and administer upon the share of a deceased partner in the partnership assets, is not properly a liquidator, but an administrator. C. C. Art. 1138 et seq.; 6 R. 13.

Hence, no recourse can be had against the surety on his bond, until the necessary steps have been taken to enforce payment against the principal. C. C. Art. 3066; 35 Ann. 391; 2 Ann. 1013; 1 Ann. 125; 20 Ann. 191.

The rule that as one chooses to bind himself he shall remain bound, may be true in more conventional obligations, but the effect of judicial bonds must be tested by the law directing them to be taken. That which is superadded must be rejected, and that which is omitted supplied. And it is settled by our jurisprudence that where there is no law authorizing the execution of a judicial bond, no force can be given to it. The order of the judge requiring the bond, gives no validity to it, where there is no law justifying the order. Hennen's Digest, *verbo* Obligations VII (a) 4) No. 6; 12 Ann. 68; 7 Ann. 110; 4 Ann. 392; 2 L. 388; 9 R. 535; 16 L. 174; 19 Ann. 142; 6 Ann. 700, 744; 12 Ann. 224, 349; 13 Ann. 288; 7 Ann. 570; 28 Ann. 244; 27 Ann. 557; 22 Ann. 536; 23 Ann. 222; 25 Ann. 218; 10 Ann. 124; 29 Ann. 297.

If the obligation sued on, although void as a judicial bond, be held valid as a conventional bond, voluntarily executed, plaintiffs cannot recover, because

a. They are not privies to the bond;

b. The obligation sued on contains no stipulation *pour autrui* of which they can avail themselves. For a valid stipulation it is necessary that the contract be commutative or an onerous donation, and that the obligees should have a personal interest in the enforcement of the condition. Those requirements are not found in the contract of suretyship sued on. C. C. Art. 1890, 1768, 1765; Troplong, *verbo* Cautionnement et Transaction, page 18, Sec. 18, and page 123, Sect. 128; Laurent, Vol. 28, Sec. 126, page 132; Toullier-Duvergier, Vol. III, Title III, Sec. 3, par. 153, page 92; Laurent, Vol. XV, Sec. 558 and 553, page 637 and 629.

*c.* The inducement of the sureties to sign the bond was the supposed existence of a valid order appointing their principal liquidator and requiring him to furnish security. With the decision that there was no such order, this consideration failed. C. C. Art. 1896, 3035, 3036; 7 Ann. 539; 10 R. 543; 10 L. 328; 35 Ann. 596; 37 Ann. 701; 39 Ann. 298.

The opinion of the Court was delivered by

Bermudez, C. J. This is a suit by the executors of Margaret Haughery against the defendants as sureties on the bond furnished by Bernard Klotz as liquidator of the partnership once existing between him and her.

The defendants filed exceptions which, on being overruled, were followed by an answer.

After hearing evidence and argument, the District Court, however, sustained the exceptions, and without passing on the merits, rendered judgment for the defendants, from which the plaintiffs appeal.

The record discloses the following salient facts:

Margaret Haughery and Bernard Klotz were partners engaged in the bakery business. By the articles, it was provided that in the event of the death of either, the survivor would wind up the partnership affairs within six months.

Margaret Haughery died leaving a will appointing the plaintiffs the executors thereof.

At the expiration of the six months following her death, Klotz, who had retained possession of the partnership property, had himself appointed contradictorily with the objecting executors, liquidator of the concern, giving bond for $40,000, with the defendants as sureties therein.

On appeal by the executors the appointment was vacated, 35 Ann. 596.

In a cross suit, thereafter brought; judgment was rendered by this Court against Klotz, as surviving partner, for $30,717 25, 39 Ann. 639.

This judgment remaining unsatisfied notwithstanding due demand, the executors instituted the present action against the sureties on the bond, to hold them responsible for Klotz' maladministration of the property of the concern while he acted as liquidator, and his failure to account and indemnify.

Viewing the bond either as a judicial or as a conventional obligation, the defendants contend that they are in no way liable.

They say that, if it be a judicial bond, no recovery can be had on it from them, until after execution against their principal has been returned unsatisfied, and that, even then, the bond is a nullity, because there was no law authorizing its exaction and execution.

They further insist that were the bond not considered as a judicial

bond, but as a conventional bond, it discloses no privity between the plaintiffs and themselves; that its consideration failed and that no breach of its condition was shown.

## I.

The defendants' contention that the bond sued on is strictly and exclusively a judicial bond, is not well founded.

Judicial sureties are such as are furnished under judicial direction, in the absence of any law.

In the case of Whitehead, 3 Ann. 42, the surety on a bond given under an order of court made in the exercise of equity powers, for the faithful discharge of the duties of one appointed *receiver* of a partnership, in which no succession was involved,—was properly declared to be judicial, for, there was no law requiring such surety.

In the case of Walmsley, 31 Ann. 156, in which the surviving partner, appointed to liquidate the partnership once existing with the deceased, had furnished bond, the court said that the bond was an ordinary obligation, on which suit could be brought both against principal and surety.

The court could more appropriately have qualified the bond an ordinary *legal* bond, for there was *law* authorizing its execution. A legal bond is that which is required by *law*. The Code discriminates between persons bound by *law* and persons bound by *judgment* to give a surety. R. C. C. 3064.

In the present controversy, the bond furnished by Klotz as liquidating partner, was given in furtherance of a special provision of *law*, which declares that the surviving partner appointed to liquidate a partnership between him and a deceased partner, is bound to give security to the amount of one-fourth over and above the estimated value of the portion coming to the deceased from the partnership property, according to the inventory. R. C. C. 1139.

It is curious that the law has established a sort of parallel between sureties and mortgages. As there exist conventional, legal and judicial sureties, so there are conventional, legal and judicial mortgages, arising from contract, law or judgment, producing kindred effects.

Nevertheless it would seem that the Code treats of legal and judicial sureties as though they belonged to the same class, and that the term *judicial* has been applied to sureties furnished pursuant, either to law or to judicial decree.

Be this as it may, however, it cannot be perceived, if the bond sued on be judicial in character and the sureties therein judicial sureties, to

what extent the distinction can shield the defendants, if they are liable otherwise.

## II.

The defendants further contend that the plaintiffs have no right of action, for the reason, that it is neither alleged nor proved, that necessary steps have been taken to enforce payment of the judgment against Klotz, their principal, and in justification, they point to Article 3066 R. C. C.

True, it provides that no suit shall be instituted against any surety on any appeal bond, or bond of any administrator, tutor, curator, executor or syndic, until such steps have been taken.

It is admitted that no execution has issued against Klotz, but the record shows demand for payment and failure by him to pay.

Traced to its origin, the article is found to be in part, an Act of 1842, No. 120, which provided that the courts of probate should have exclusive cognizance of all suits or actions against sureties on the bonds of appeal and all others which they are bound by law to receive, or exact from appellants and administrators, tutors, curators and testamentary executors generally, and no suit shall be instituted against the surety, until the necessary steps have been taken to enforce payment against the principal.

The act was considered deficient and was amended in 1855, so as to embrace besides, sureties on bonds furnished by syndics and sureties on any appeal bond. Act 300, Sec. 5.

By the amendment, the word tutor, found in the act of 1842, was inadvertently left out; but in 1866, the omission was supplied. No. 22, p. 42.

It is apparent that, in legislative intent, the sureties proposed to be protected were those serving on bonds furnished by succession and bankruptcy representatives, and by persons representing minors or interdicts or absentees, and that it was not designed that the sureties of liquidators of partnerships, in which successions were concerned, should be included.

From the circumstance that Articles R. C. C. 1140, 2, 4, which relate to surviving partners term his gestion or management of the affairs, an "administration" it cannot be inferred that this official must be viewed as a succession representative, and that his sureties are therefore embraced within those denominated in the article.

Their duties are essentially distrinct and independent, even antagonistical.

It is a staring fact that a liquidator has no mandate to administer the succession of the deceased partner and pay its creditors. He gives a bond, not in favor of the court, but in favor of the succession representative, when an appointment is legally made. In such cases, there necessarily must be both a liquidator and a succession representative,— the former to manage the concern in which the succession has an interest and account to the succession representative, the latter to administer the succession in which the liquidator has no direct interest, and to account, not to the liquidator, but to the court, creditors, legatees and heirs, if there be any.

No doubt the Legislature had the power to extend to the sureties on a liquidator's bond, a similar protection; but it did not do so. Inserting such sureties within the letter of the text, would be judicial legislation. When a law is clear and free from ambiguity, its letter must not be disregarded under the pretence of pursuing its spirit. R. C. C. 13. The inclusion of the sureties named in the article amounts to the exclusion of all others, not mentioned in it.

It therefore follows, that, as the law does not require that steps be taken against a liquidator to enforce a judgment against him, as a condition precedent to a suit like this against the sureties on bonds furnished under Article 1139 of the R. C. C., the executors were not bound to issue execution against Klotz, and that they had authority to stand in court to bring this action against the defendants as his sureties, just as they could have sued them, when they originally proceeded against him.

## III.

The next contention is that, whereas this Court has decided in Klotz vs. Macready, 35 Ann. 596, that Articles 1138 et seq., R. C. C., entitling the survivor of a commercial partnership to be appointed liquidator of the concern, do not apply to testamentary successions, and that the appointment of Klotz was unauthorized and a nullity, it is a sequence that whatever was done in furtherance of the appointment is of no effect, and that the bond sued on being therefore void, it must be viewed as having never been uttered.

In support of this position, the defendants rely on a number of cases in which it was held, that no recovery could be had from sureties on bonds furnished, when there existed no law authorizing the execution.

The correctness of the rulings invoked surely cannot be, nor is it, assailed. To the reverse, it is admitted; but the trouble is that they have no bearing on the present controversy, as, in the matter in which

the bond sued on was furnished, there was a *law* requiring the giving of the bond, and the court has the power and it was its duty, to require it. R. C. C. 1139.

In the case, the decision of which is invoked, this Court did not hold that there was *no law* authorizing the appointment of a liquidator to settle the partnership in which a deceased was concerned, and it did not decide that the court had no right to make the appointment, in a proper case. All it did rule, was that the succession of Margaret Haughery was not *vacant* and was represented by testamentary executors, who had the right, for valid reasons, to oppose the appointment of a liquidator, and that, as the six months following the death had expired, within which the partnership affairs had to be wound up, the District Court had erred in making the appointment, which, consequently was rescinded.

This judicial declaration could not and did not release Klotz from the obligation which he had incurred to administer and account, nor could it, nor did it, discharge the sureties from responsibility. The bond which Klotz furnished was given to enable him to retain and obtain possession of the partnership actual and eventual accounts, for the maladministration of which he has been judicially held liable.

The furnishing of the bond, with the defendants as sureties on it, has accomplished its purpose and has produced legal effects, the benefit of which the executors can demand, although the appointment was annulled. This is not one of the cases in which the maxim: *Quod est nullum, nullum producit effectum*, applies. To all rules, there are exceptions which confirm them. R. C. C. 1120.

The law is indisputably clear, that no administrator can be legitimately appointed to a succession, when there are no debts to pay, when all the heirs are of age and present, when they accept it unconditionally and oppose the appointment sought.

Assuming a case in which an application of that sort is made and granted, in which the party appointed qualifies and gives bond, taking possession of the succession assets, notwithstanding appeal by the heirs, in which the appointment is annulled,—could it be claimed for a moment that when the heirs would demand possession of the assets from the administrator, who would fail to turn them over, notwithstanding judgment and unavailing steps to enforce it,—the sureties could shirk all responsibility, because the order appointing the administrator had been annulled, the appointment vacated and the bond thereby avoided?

Surely not, simply because, although the court improperly exercised its discretion, there was a law authorizing the appointment in a proper case, under which an order was made by which the appointee possessed

himself of the succession assets, the order producing legal effects until annulled. R. C. C. 1120, Succession of Altemus, 364; Webb vs. Kellar, 39 Ann. 66.

It would be monstrous to hold otherwise. The case certainly would be different, if, although the bond had been furnished, the appointed administrator had taken no possession of the assets and had made himself in no manner responsible for the same.

## IV.

Another defence set up by the defendants is, that the bond was furnished payable to the judges of the Civil District Court; that the plaintiffs are not parties or privies to it, or the assignees thereof.

It is a ready answer to such objection, that the bond, being a *legal* bond, and the sureties therein being *legal* sureties, the bond should be read by the light of the law under which it was required and received.

That law specially provides that the liquidator shall furnish bond in favor of the succession representative for a certain amount. R. C. C. 1138 *et seq.*

Under the well settled doctrine that were a bond is given under the authority of a law, whatever is included in the bond and which is not required by the law, must be read out of it, and, whatever is not expressed and ought to have been incorporated, must be read as if inserted into it, it follows that the words found in the bond by which it is made payable to the *judges* of the Civil District Court, must be left out, and the words to the succession representatives, must be deemed as embodied in their place.

By reason of all the foregoing views, it becomes unnecessary to consider what the consequences would be to the sureties, were the bond, instead of being what it is found to be, a conventional obligation.

## V.

It cannot be urged that the consideration of the bond failed, for, the stipulated condition was that the appointed liquidator would properly manage the property entrusted to him, account therefor and otherwise discharge the functions and duties incumbent upon him, and that, on his failure to do so, the sureties would make good his default.

It was not only the appointment, but also the taking of possession, the gestion of the partnership assets, the liquidation of the concern, and the proper accounting for the same, that constituted the consideration of the bond.

Sureties have never been permitted to escape responsibility, when the bond, which they signed, had served as an instrument for obtaining

possession of property, which subsequently had not, on proper demand, been lawfully accounted for. They have been taught that, in such cases, signing is not an idle or vain formality.

## VI.

Neither can it be claimed that there was no breach shown.

The judgment by which Klotz was condemned to pay a large sum because of his maladministration and failure to account for the partnership assets in his possession, both, previous, during and subsequent to his appointment, and his default after his appointment had been declared null and been vacated, to settle for that judgment, are *prima facie* evidence, to a certain and sufficient extent, against his sureties of his delinquency, to justify the saying, that he has broken his contract and his sureties are responsible with him and in his place eventually, as is written and promised in the bond.

## VII.

The extent of that liability is the last matter to be considered.

It is apparent that the defendants cannot be held as fully as Klotz was, (29 Ann. 638) for, their obligation, towards the succession of Margaret Haughery, are to be measured by a different standard.

Klotz was condemned to pay for the value of all the partnership assets which were in his possession as surviving partner, less proper deductions, as it appeared that certain portions thereof, although seemingly *sold* at public auction, under judicial authority, had been adjudicated, for his account and benefit, to persons interposed, who, afterwards transferred their ostensible title to the same, to him at cost price.

His position as liquidator of the concern, subsequently annulled, may well be assimilated to that of a succession representative where official acts are valid, although, on appeal, his appointment be annulled. R. C. C. 1120 ; 32 Ann. 364 ; 39 Ann. 66.

Whatever was accomplished by him by fraudulent devices, as liquidator, was considered as illegal and as producing no effect to exonerate *him*, for the reason, that no *third* person was at the time concerned in the litigation, and that such persons could be shielded by the authority in furtherance of which Klotz was acting.

The case is not the same as to the sureties, who, for the time being, were and are presumably *such* persons.

They are responsible, under the law and the terms of their bond, only for a proper administration by Klotz, as liquidator, of the assets of which he had possession in that capacity, unless they or either of them

be shown to have collusively participated in a dishonest and illegal disposition of those assets by their principal, whether in his individual or official capacity.

The *quantum* of their liability was not passed upon by the District Judge, owing to the peculiar decision which he made on the issues presented.

To arrive at a correct conclusion on that subject, would require an onerous examination of intricate matters which, in preference, appertains to the tribunal of first instance, rather than to a court having appellate jurisdiction.

Following precedents in kindred instances, whatever might be strictly our authority presently to investigate and adjudicate upon the amount and extent of the respective responsibility of the sureties, we deem it preferable to remand the case to the lower court, primarily to ascertain the same.

It is, therefore, ordered and decreed that the judgment appealed from be reversed; and it is now ordered and adjudged, that the exceptions filed by the defendants be overruled; and, that the case be remanded to the lower court, to be further proceeded with according to the views herein expressed and otherwise according to law, and that the defendants pay costs of appeal, and that those of the lower court abide the final determination of the suit.