No. 2301.

Second Circuit

---

MONROE HARDWARE COMPANY, INC., v. A. DELATTE ET AL.

---

(May 9, 1925, Opinion and Decree.)

(June 13, 1925, Opinion and Decree on Application of Warrantor for Rehearing.)

(June 30, 1925, Opinion and Decree on Application of defendant, Ouachita Valley Camp No. 10, W.O.W., for rehearing.)

(July 18, 1925, Rehearing Granted. on Whole Case.)

(May 7, 1926, Opinion and Decree on Rehearing.)

(May 7, 1926, Notice of Application for Certiorari to Supreme Court on Behalf of Warrantors.)

---

(*Syllabus by the Editor.*)

---

1. **Louisiana Digest—Mechanic's Privileges —Par. 21, 23.**

Under Section 2 of Act No. 229 of 1916, where the material man filed an itemized statement of account, which was sworn to and fastened together as one document with other necessary statements, he has complied with all the requirements of the law if he filed this statement within forty-five days after the acceptance of the work by the owner.

2. **Louisiana Digest—Mechanic's Privileges —Par. 21.**

Under Section 2 of Act No. 229 of 1916, where the material man properly filed his affidavits and itemized accounts, the fact that the clerk failed to exactly transcribe on the mortgage records names of each item mentioned on the itemized account, but only gave in the mortgage record a list of the amounts and dates, cannot defeat the material man's claim of a privilege.

3. **Louisiana Digest—Pleading—Par. 7.**

A prayer in the alternative for judgment against the owner of a building, and that its privilege as furnisher of material be recognized and enforced against the building is not inconsistent with a suit under Act 229 of 1916 by the material man for the purpose of collecting the amount due him from the contractor for his warrantor.

**4.  Louisiana Digest—Pleading—Par. 18, 62.**

A call in warranty by the owner of a building when sued by the material man under Act 229 of 1916, which gives in detail the amounts claimed to have a privilege as filed by the various claimants and alleges a privity of action between the owner of the building and the warrantor as to the laches of the contractor-builder, states a cause of action.

**5.  Louisiana Digest—Mechanic's Privileges —Par. 51, 55.**

A judgment against the warrantor in a building contract bond under Act No. 229 of 1916 should not be executed until the owner of the building shall pay into the hands of the warrantor or deposit in the registry of the court would be applied on the claims of the amount which has not been paid.

ON APPLICATION FOR A REHEARING

**6.  Louisiana Digest—Builders and Buildings—Par. 7; Bonds—Par. 8.**

Under the well-settled doctrine, where a bond is given under the authority of a law, whatever is included in the bond which is not required by the law must be read out of it, and whatever is not expressed and ought to have been incorporated must be read as if inserted into it.  This doctrine applies to building contract bonds under Act No. 229 of 1916.

**7.  Louisiana Digest—Builders and Buildings—Par. 7, 29, 30; Evidence—Par. 7.**

Where several suits are pending brought by material men and mechanics under Act No. 229 of 1916 arising under the same building contract under the same building, the court, in deciding whether the owner has sufficient money due on the contract, but unpaid, with which to pay the claim of one material man, must take judicial notice of the other suits and the total amount due to all material men and mechanics. Therefore, the court cannot give judgment

against the owner of the building on one claim without allowing him to call in his warrantor, merely because he has sufficient money due and unpaid on the contract with which to pay this single claim.

**8.  Louisiana Digest—Estoppel—Par. 22 51; Pleading—Par. 40, 47.**

The defendant has the right to urge an estoppel as a reason why warrantor's plea of anticipated payments was not good without any special plea.  Replications are not required or permitted under Louisiana Practice.

**9.  Louisiana Digest—Builders and Buildings—Par. 21, 29.**

Where the contract which the owner of the building had with the warrantor of the contractor, contained the stipulation that ten per cent of the amount of the contract was to be retained by the owner, the owner having paid over nine-tenths of the amount to the contractor, will be required to deposit the amount overpaid together with the balance due to the contractor, with the court.

**10.—Louisiana Digest—Appeal—Par. 559.**

The appellate court, after having decided a restricted rehearing, cannot on its own motion grant another rehearing upon the entire case.

**11.  Louisiana Digest—Builders and Buildings—Par. 29, 30.**

In a concursus proceeding to determine the amount to be paid into court by the owner in order to allow the execution of the judgment against the warrantor under a contract with the warrantor requiring one-tenth of the contract price to be withheld from the contractor in order to secure the warrantor, the burden of proof of deduction claimed by the owner for money "reserved under contract and paid out direct to material men and laborers", and "money paid out under instructions of the Surety Company" is on the

owner that such money was properly paid.

Appeal from Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. Percy Sandel, Judge.

This is a suit to recover from the contractor, the owner and the warrantor, under Act No. 229 of 1916, governing building contracts.

There was judgment by default against the contractor and the owner and warrantor denied liability.

There was judgment for plaintiff and defendants, owner and warrantor, appealed.

Judgment amended and affirmed.

On a rehearing judgment again amended and affirmed.

Blanchard, Goldstein & Walker, of Shreveport, attorneys for warrantor, appellant.

Stubbs & Theus and W. F. Pipes, of Monroe, attorneys for plaintiff, appellee.

M. C. Redmond, of Monroe, attorney for H. L. Thompson.

J. M. Munholland, of Monroe, attorney for Ouachita Valley Camp No. 10, Woodmen of the World, defendant, appellant.

REYNOLDS, J. In this case plaintiff sues to recover from A. Delatte, contractor for the building of a lodge building, and from Ouachita Valley Camp No. 10, Woodmen of the World, owner of said lodge building, the sum of $186.71 for material

furnished by it to A. Delatte and used in the construction of said building.

A. Delatte made no defense and judgment by default was rendered against him.

Ouachita Valley Camp No. 10, Woodmen of the World, filed a motion to require the plaintiff to elect, which motion was overruled.

Defendant, Ouachita Valley Camp No. 10, Woodmen of the World, and warrantor, Union Indemnity Company, denied liability on the ground that plaintiff had no privilege for the reason that it did not cause to be recorded in the mortgage records an itemized statement of its claim, as required by section 2 of Act 229 of 1916; and also denied liability on the ground that plaintiff had failed to show that the materials for which a privilege is claimed were used in the construction of the building. The warrantor further denied liability on the ground that the petition of Ouachita Valley Camp No. 10, Woodmen of the World, failed to express a cause of action against the warrantor under the terms of the bond, and alleges that Ouachita Valley Camp No. 10, Woodmen of the World, has funds in its possession due to the contractor of an amount greater than that claimed in this suit.

On these issues, the case went to trial. There was judgment in favor of the plaintiff for $176.95, with 5% per annum interest thereon from judicial demand against Ouachita Valley Camp No. 10, Woodmen of the World, with recognition of its lien and privilege, and judgment in favor of Ouachita Valley Camp No. 10, Woodmen of the World, against Union Indemnity Company for a like amount, in warranty.

Defendant, Ouachita Valley Camp No. 10, Woodmen of the World, and warrantor, Union Indemnity Company, have appealed.

## OPINION.

In this case the Ouachita Valley Camp No. 10, Woodmen of the World, contracted with A. Delatte for the erection of a lodge building but it failed to record in the office of the recorder of mortgages the contract or agreement or to furnish bond within the time and condition as the law required in order to relieve the owner from liability for unpaid labor and material used in the construction of the building.

Therefore, this case comes under Act 229 of 1916.

Plaintiff's demand is for $186.71 for material sold by it to A. Delatte for use in erecting a building for Ouachita Valley Camp No. 10, Woodmen of the World.

It offers in support of its claim the following testimony:

Frank Mayes testified, pages 3, 4, 15, 16.

"Q. Mr. Mayes, I hand you an itemized account of the Monroe Hardware Company against A. Delatte, the account sued on in this case; examine that account and state whether or not it is true and correct, and whether or not you made the sales of those articles to Mr. Delatte.

"A. I made quite a number of these sales, and the account to the best of my knowledge is correct.

"Q. Do you know to whom the goods were actually delivered?

"A. Yes, sir.

"Q. To whom?

"A. Mr. Welch.

"Q. When you knew him, what was he doing in Monroe?

"A. Working at the W. O. W. building.

"Q. Woodmen of the World building on Jackson street?

"A. Yes, sir.

"Q. What did you actually see him doing?

"A. I saw him superintending. the work on the building.

"Q. You have already testified that you sold some of these articles. I hand you 17 slips designated 'Plaintiffs 2', and. ask you to state what those slips are, what they represent?

"A. Orders to the Monroe Hardware Company for certain materials which were ordered by A. Delatte.

"Q. By whom are the orders signed?

"A. Mr. Welch's name is signed to them.

"Q. Do you know whether or not that is Mr. Welch's signature?

"A. I don't know. I didn't' see him sign it. All signed just alike.

"Q. How did these orders come into the possession of the Monroe Hardware Company?

"A. By laborers from the job.

"Q. Do you know where the laborers came from?

"A. No, to say just where they came from. I don't know where they came from.

"Q. I am talking about with reference to when they called at your place of business, the Monroe Hardware Company?

"A. I would not actually see them leave the building down there—sometimes I would.

"Q. Where did you see them?

"A. On the building; there at the building.

"Q. Woodmen of the World building?

"A. Yes, sir.

"Q. What were they doing?

"A. Working for Mr. Welch.

"Q. These laborers you saw working for the Woodmen of the World or on the Woodmen of the World building, under Mr. Welch, were the same laborers that called at the Monroe Hardware Company with these orders?

"A. Yes, sir."

Mr. Kramer testified, pages 9 and 11.

"Q. This is a suit here against A. Delatte, contractor, and Woodmen of the World, for certain material the Monroe Hardware Company sold to A. Delatte and used in the Woodmen of the World building on Jackson street. Examine what purports to be an itemized statement of the

material sold and state whether or not any of that material listed there actually went into the construction of that building. Confine your answer to your own knowledge.

"A. Yes, sir, here is an item I sold myself.

"Q. What item is that, Mr. Kramer?

"A. Two sets of front door locks.

"Q. The invoice price of those articles are what?

"A. $25.20.

"Q. Did you know Mr. Welch?

"A. Yes, sir.

"Q. You know what connection if any he had with Mr. Delatte?

"A. I know that Mr. Welch introduced himself as ·foreman in charge of—Mr. Welch purchased the material from me. Did not directly wait on him for that building.

"Q. What, if anything, did you ever see Mr. Welch do in connection with this Woodmen of the World building?

"A. I visited the building on several occasions during the construction and I saw Mr. Welch directing the men how to—one particular occasion they were installing frames on the rear of the building, second floor.

"Q. Do you know he was in charge of the construction of the Woodmen of the World building?

"A. Yes, sir, he was.

Newton J. Moore testified, pages 21, 25. 25.

"Q. I hand you what purports to be an itemized account of the Monroe Hardware Company against A. Delatte, designated as plaintiff '1', and ask you to state whether or not that account is true and correct, and made from the books of the Monroe Hardware Company?

"A. It is correct.

"Q. In saying that the account is correct—

"A. Correct at the time it was made.

"Q. How is that?

"A. The statement is correct at the time it was made.

John J. Fuerriero testified, page 29.

"Q. State your name and occupation?

"A. Jno. J. Guierrero; combination stenographer and bookkeeper for Monroe Hardware Company.

"Q. I hand you herewith document marked Plaintiff '1', and ask you to examine it and state what it is.

"A. Account against A. Delatte.

"Q. Did you make out that account?

"A. I made it out all right—in my handwriting.

"Q. Is that a true and correct account as shown from the books of the Monroe Hardware Company.

"A. It is correct as shown from the books; that's my handwriting.

"Q. You state that that account is true and correct?

"A. As far as my knowledge it is."

Defendant offered no evidence contradictory of the above; and in our opinion the evidence clearly warranted the judgment of the trial court for the amount allowed, $176.95, and sustaining the privilege claimed.

Defendant, Ouachita Valley Camp No. 10, Woodmen of the World. and Union Indemnity Company, called in warranty urge as a defense against plaintiff's claim for a privilege that plaintiff did not have an itemized statement of its account recorded in the office of the Recorder of Mortgages as required by section 2 of Act 229 of 1916, which provides:

"Any person claiming a privilege as aforesaid shall file in the office of the Recorder of Mortgages of the parish in which the land is situated a statement setting forth the amount claimed, and the items thereof as nearly as practicable the name of the owner, the name of the contractor, the name of the claimant and a description of the property subject to the privilege verified by affidavit. Such statement must be filed within forty-five days after acceptance of the work by the own-

er of the land on which the work was done or his trustee or agent."

The plaintiff filed an itemized statement, as shown in the affidavit of Sam Ivy, contained in plaintiff's filing, page 139. This statement was fastened together as one document, and complied with all the requirements of the law, taken as a whole, and was filed within forty-five days.

As to this itemized statement, C. E. Whitford testified, pages 67, 68 and 69.

"Q. Were you an employee of the Monroe Hardware Company in February, 1923?

"A. Yes, sir.

"Q. I hand you a document heretofore designated as Plaintiff '6', and ask you to state whether or not you have ever seen that document before?

"A. Yes, sir, I have.

"Q. When you last saw it, to whom did you deliver it?

"A. To the Clerk of the Ouachita Parish Court, and I told him I wanted the lien and bills attached filed and recorded; and before doing so he told me I would have to get him two dollars before he would file and record it; therefore, I went back to the office and got two dollars and made out a bill marked filing and recording papers.

"Q. What was the name of the gentleman?

"A. John Sholars.

"Q. Did you pay Mr. Sholars?

"A. Yes, sir, I did.

"Q. What instructions, if any, did you give Mr. Sholars when you handed him this document?

"A. I gave him instructions to file and record the paper I had there."

John Scholars testified, pages 34, 35 and 39.

"Q. I ask you to examine Mortgage Record 97, page 531 et seq. and state whether or not the invoices or itemized accounts which are attached to that affidavit are recorded in that mortgage record?

"A. I have got a big batch of papers in one hand and a book in the other, and I have to check this over to see how much is recorded. There is one itemized statement here recorded. According to my recollection about this—which is in my hand and which I signed—there was instructions written on here in my hand to record one of these itemized statements. I see in Mortgage Book 97, page 531, there is some itemized statements recorded, but if you ask me to say what part of this filing here, the original, is recorded in the mortgage record I would have to take it and check it out.

"Q. Are the itemized invoices which are attached on under the itemized statement recorded in the mortgage record?

"A. I don't know. I never saw the mortgage record until just now, and I don't know what is in there.

"By the Court: Check it out and see.

"A. Can I make a statement like I checked it out.

"By the Court: Yes.

"A. I want to say this: This first affidavit is recorded and the sworn itemized statement giving the date and amount is recorded. On the first statement there are about thirty-two sheets attached to that giving the date and amount and describing the articles which are not recorded; and following that is another sworn itemized statement, giving date and amount, which is recorded, according to instructions, and attached to that is a batch of about fifty sheets describing the articles, the date and amount which are not recorded.

"Q. One clip holding them all?

"A. Yes, and I made that filing in both places in order to identify all these papers with this lien. I don't know why I did that. I didn't have to do that but I did that to identify all these papers to identify them all with the lien. I want to make it clear that it is the one filing."

Under this testimony we are convinced that the itemized account as a whole was filed in the office of the Recorder of Mortgages and the fact that the clerk failed to actually transcribe on the mortgage records the name of each item mentioned

on the itemized account but only gave in the mortgage record a list of the amounts and dates, cannot, in our opinion, defeat the plaintiff's claim of a privilege. The names of the various items were contained on the itemized statement filed and this, in our opinion, was sufficient, under the conditions as shown by the evidence in this case.

Defendant, Ouachita Valley Camp No. 10, Woodmen of the World, insists that its motion to require the plaintiff to elect on account of inconsistent and conflicting allegations, should have been sustained.

We have carefully read the plaintiff's petition and as we construe it the allegations are consistent and support the prayer of the petition. Its prayer is in the alternative, and in the alternative only. It asks that if Ouachita Valley Camp No. 10, Woodmen of the World, is not held to be liable in solido with A. Delatte, the contractor, then that it be decreed to have a privilege on the building of Ouachita Valley Camp No. 10, Woodmen of the World. There is no inconsistency in its prayer for judgment against Ouachita Valley Camp No. 10, Woodmen of the World, and its prayer that its privilege, as furnisher of material, be recognized and enforced against the building of Ouachita Valley Camp No. 10, Woodmen of the World.

The Union Indemnity Company, called in warranty, insists that the petition of Ouachita Valley Camp No. 10, Woodmen of the World, does not express a cause of action against it, and its counsel argue with great force that Ouachita Valley Camp No. 10, Woodmen of the World, is seeking to invoke a concursus proceeding without having first deposited in the registry of the court the balance due on the contract price.

We think the call in warranty on the part of Ouachita Valley Camp No. 10, Woodmen of the World, does express a cause of action. It gives in detail the amounts claimed to have a privilege on the building of Ouachita Valley Camp No. 10, Woodmen of the World, as filed by the various claimants, and alleges a privity of action between Ouachita Valley Camp No. 10, Woodmen of the World, and the Union Indemnity Company as to the laches of the builder, A. Delatte.

We think the Union Indemnity Company is entitled to have the judgment herein recorded against it modified so as to restrain its execution until Ouachita Valley Camp No. 10, Woodmen of the World, shall pay into the hands of the warrantor or deposit in the registry of the court, to be applied on the claims of the privilege creditors mentioned herein, the sum of $1109.40.

It is, therefore, ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby affirmed, except that part of the judgment in favor of Ouachita Valley Camp No. 10, Woodmen of the World, and against Union Indemnity Company, and that part of the judgment is so modified as to stay execution thereon until Ouachita Valley Camp No. 10, Woodmen of the World, shall pay over to Union Indemnity Company, or deposit in the registry of the District Court of Ouachita parish, subject to the privilege claims mentioned in this suit, as im- part the sum of $1109.40; and that as thus amended the judgment of the lower court is affirmed. The costs of the trial court to be paid as provided in the judgment appealed from. The costs of the appeal to be paid by the Ouachita Valley Camp No. 10, Woodmen of the World.

## ON APPLICATION FOR REHEARING.

CARVER, J. In an able brief for rehearing, counsel for warrantor earnestly urge:

1. That the exception of no cause of action to the call in warranty should have been sustained, for three reasons, namely:

A. That the bond being in favor only of the defendant is a mere indemnity bond which cannot serve as the basis of a call in warranty, for lack of privity between plaintiff and warrantor, and on which no right of action arises until payment by defendant of the debt sued on.

B. That the call in warranty shows that defendant owes the contractor more than enough to pay the claim sued on.

C. That the call is too vague to admit proof.

2. That the proof in this record does not show the existence of any valid claim against the contractor besides the one sued on, to pay which the money due by defendant to the contractor is more than sufficient.

Before undertaking to answer these contentions, it will be well to point out that, in September, 1923, after completion of the building, defendant's attorney wrote the warrantor fully disclosing the situation, which was as follows:

The contract price was _____ $27,495.00
on which had been paid _____ $25,444.07

leaving due the contractor _____ $ 2,050.93

Liens had been filed amounting to $4,080.39, or, say, $2,029.46 over and above the amount due the contractor.

One of these liens, though, namely; that due to Frizzell, amounting to $410.30, de-fendant's attorney considered had been filed too late.

He, therefore, suggested to the surety company that it send $1,619.16 which, added to the $2,050.93 defendant owed, would be sufficient to discharge all the recorded liens, except Frizzell's.

October 9, 1923, the surety company replied to this letter, directing payment of certain liens and non-payment of others.

Its letter concluded thus:

"Should there be any suits instituted against the W. O. W. on the last referred to liens this company will furnish attorney to defend the suits provided it is notified of these suits promptly."

Defendant paid those instructed to be paid, which left $1,109.40 still due the contractor.

When the present plaintiff, one of those directed not paid, filed its suit, defendant answered, calling the warrantor in warranty.

The warrantor filed its answer on April 21, 1924, and in the answer evinced no disposition to repudiate the apparent assumption by it of control over the situation as shown by its letter of October 9.

It denied, categorically, for lack of sufficient information, the allegations of plaintiff's petition in twelve paragraphs. In its thirteenth paragraph it plead prescription against plaintiff. The only part of its answer referring to the call in warranty is contained in the fourteenth paragraph, which set up, as its sole defense against the call in warranty, the claim that defendant was obliged, under its contract with the contractor, to retain 10 per cent

of the contract price until forty-five days after acceptance of the building, which amount, it alleged, was more than sufficient to pay such judgment as might be rendered against defendant in the suit.

On May 12, 1924, it sought to change front, and filed an exception of no cause of action to the call in warranty, which exception it seriously presses in its application for rehearing.

I.

Counsel confidently urge that the case of Bain vs. Arthur, 129 La. 143, 55 South. 743, is conclusive of the first point herein urged.

We do not think so. The bond in that case was not a statutory bond given to secure the performance of the contract by the contractor. It was a mere conventional obligation given to indemnify the surety in case of loss by reason of that surety's having signed a contractor's bond.

The bond in this case is a statutory bond, given under Act 167 of 1912 and amendments, and so states in lines 57 and 58.

See page 89, exhibit 17.

In Macready vs. Schenck, 41 La. Ann. 456, 6 South. 517, the court dealt with a bond given by a surviving partner as liquidator of the partnership under a statute (Civil Code 1138 et seq.) requiring such bond to be made payable to the representative of the deceased partner's succession. The bond there was made in favor of the judges of the court instead of to the succession representative.

The court said:

"Under the well settled doctrine that where a bond is given under the authority of a law, whatever is included in the bond which is not required by the law, must be read out of it, and, whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it, it follows that the words found in the bond by which it is made payable to the judges, of the Civil District Court, must be left out, and the words to the succession representatives, must be deemed as embodied in their place."

Under this authority we think the bond in this case must be regarded as in favor of the material men as well as the owner, that being the requirement of the statute under which it was given.

This disposes of counsels' contention that there was no privity between plaintiff and warrantor, and also of their claim that no right of action arises until payment by plaintiff of the claim sued on.

As to defendant's admission on that it still owed the contractor enough to pay plaintiff, the call also set up that there were other claims all of which together were more than sufficient to exhaust the balance due the contractor. This, in our opinion, showed that there would be liability on the bond and hence constituted a cause of action.

The claim of vagueness, we think, cannot be urged under an exception of no cause of action. Such a plea should have been advanced in its own name and in limine. If so advanced, defendant could have cured and would have been entitled to cure its petition, if defective on that ground, by more specific allegations.

## II.

On the merits, the warrantor's claim in this case is not that plaintiff's claim is not established but that defendant owes the contractor enough to pay it, and there being no proof in this record that any other claim is due, it follows that defendant cannot recover on the bond.

Other suits before the court do show other valid claims, enough to overcome the balance due the contractor.

But warrantor's counsel say that those suits should not be regarded as evidence herein.

Taking this as correct, we do not think it entitles the warrantor to a dismissal of the call in warranty in this suit and then, in turn, to a dismissal of the call in each of the other suits for the same reason, thus making the small balance of $1109.40 serve to defeat claims amounting to much more than that.

In equity we think warrantor entitled to no more than a provision which will assure payment of this balance on valid claims whether included in this suit or other suits, so that warrantor can be held only for whatever amount may be due after defendant pays on valid claims what it should pay.

This provision can be made by requiring it to pay into the registry of the court before execution of the judgment herein rendered, a sum to be applied to this claim and to other valid claims, if any. If, on examination of the other suits, the claims therein are found valid, then they, too, must be paid out of the deposit. If not, they will be rejected.

The result of this will be that defendant can recover nothing until and unless the valid claims exhaust the amount which it should pay but without deciding on this case that they do·exhaust it.

Counsel also contend that defendant is trying to provoke a concursus in an irregular way and without depositing the balance due the contractor.

We do not perceive how this course has resulted or could have resulted in any prejudice to the warrantor. The plea comes with poor grace, considering that the warrantor, in its letter of October 9, 1923, virtually directed defendant to await suit of the lienors and promised to furnish an attorney to defend same.

The introduction of this letter was objected to by warrantor, but only on the grounds that it was incompetent, immaterial, outside of the pleadings and did not refer to payments called for by the contract. But we do not think these objections well founded. The only defense made by warrantor against the call in warranty, besides the exception of no cause of action, was that defendant should have retained more of the contract price than it did retain.

The letter accounted for part of what warrantor was claiming should have been retained.

Counsel also objects that defendant's contention as to this letter being a justification of payment is virtually urging an estoppel which, warrantor says, is not allowable, because estoppel was not pleaded.

Defendant did not urge this estoppel as a ground of recovery but as a reason

why warrantor's plea of anticipated payments was not good. We think it had the right to do this without any plea, replications under our rules of practice not being required or permitted.

Our re-examination, though, has convinced us that there was error to the prejudice of warrantor in our original decision in two respects.

1. In fixing the amount of the deposit to be made by the Camp at $1109.40; and

2. In giving judgment against the warrantor for the whole of plaintiff's claim herein instead of for the amount of that claim less plaintiff's share of the deposit so to be made.

Under its contract the Camp should have retained 10% of the contract price, which would be $2749.50. At the time of its report to the warrantor it had only $2050.93, showing an anticipated payment to the contractor of $698.57. We think the Camp should be regarded, quo ad the surety, as still having this $698.57 on hand. This added to the $1109.40 really due the contractor will total $1807.97, which is the amount that should, in our opinion, be deposited.

We cannot correct these errors, at least without the consent of the Camp, without granting a rehearing.

See Act 100 of 1896.

Reed vs. Corbin, 115 La. 137, 38 South. 942.

Inasmuch, though, as no one is interested in opposing the correction except the Camp, we think it not improper to make it with its consent.

We shall, therefore, refuse the rehearing applied for by warrantor but make the indicated changes with a reservation to the Camp of its right to apply for a rehearing which, if applied for, will be granted as of course. If not applied for, its failure to do so will be taken as consent to the correction.

For these reasons, the rehearing is refused, but the decision heretofore rendered is modified as follows:

First: Instead of defendant, Ouachita Valley Camp No. 10, Woodmen of the World, having the right to execute the judgment herein rendered against the warrantor on depositing $1109.40, it is decreed that it shall have that right only on depositing $1807.97; out of which deposit shall be paid, pro rata, the judgment in favor of the plaintiff in this suit and such judgments as may be or may have been rendered in favor of plaintiffs in the following suits in which the warrantor herein has been called in warranty, namely:

No. 2302, Parlor City Lumber Co., Inc., vs. A. Delatte, et al.

No. 2303, C. C. Bell vs. A. Delatte et al.

No. 2304, Monroe Hardware Company, Inc., vs. A. Delatte et al.

Second: The judgment herein rendered in favor of Ouachita Valley Camp No. 10, Woodmen of the World, against Union Indemnity Company, shall be credited with the share of the plaintiff herein of such deposit.

Third: The right is reserved to Ouachita Valley Camp No. 10, Woodmen of the World, to apply for a rehearing.

Ouachita Valley Camp No. 10, Woodmen of the World, defendant, shall pay the cost of this appeal; all other costs to be paid

by the warrantor, Union Indemnity Company.

Odom. Judge, recused.

## ON APPLICATION FOR REHEARING.

CARVER, J. In passing on the application of Union Indemnity Company for a rehearing we refused same but modified our original decree by ordering suspension of the Ouachita Valley Camp's right to execute the judgment herein rendered in its favor and against Union Indemnity Company until it deposited $698.57 in addition to the $1109.40 ordered deposited in the original decree.

This being a change in the decree prejudicial to the Camp, the right was reserved to it to apply for a rehearing which, it was stated, would be granted, as a matter of course, if applied for.

Counsel for the Camp has applied for a rehearing, praying that our original decree be reinstated and claiming that the $698.57 should not be regarded as still in the Camp's hands quo ad the surety.

As the rights of all parties quo ad this $698.57 can be fully protected by restricting the rehearing to the question of the Camp's obligation to deposit this additional amount vel non without entirely suspending execution of

It is decreed—

First: That a rehearing is hereby granted to Ouachita Valley Camp No. 10, Woodmen of the World, solely on the question whether it should deposit six hundred ninety-eight and 57-100 dollars additional to the eleven hundred and nine and 40-100 dollars previously ordered deposited.

Second: That the rehearing hereby granted shall suspend execution of the judgment herein rendered in favor of plaintiff against the Camp and in favor of the Camp against the Union Indemnity Company only to the extent of a share of said six hundred and ninety-eight and 57-100 dollars in proportion to plaintiff's judgment herein and those rendered in favor of the plaintiffs in the following numbered and entitled cases on the docket of this court, to wit:

No. 2302, Parlor City Lumber Company, Inc., vs. A. Delatte et al.

No. 2303, C. C. Bell vs. A. Delatte et al.

No. 2304, Monroe Hardware Co., Inc., vs. H. L. Thompson et al.

Odom, Judge, recused.

---

## ON REHEARING

WEBB, J. In the original opinion in this cause, the judgment of the District Court was amended by staying the execution of the judgment rendered against the Union Indemnity Company, warrantor, in favor of the defendant, Ouachita Valley No. 10, owner, until the latter had deposited, in the registry of the court the sum of eleven hundred and nine and 40-100 dollars.

The Indemnity Company, warrantor, moved for a rehearing, which was refused, but the original decree was modified so as to increase the amount which the owner should deposit in the registry of the court from eleven hundred and nine and 40-100 dollars to eighteen hundred and seven and 97-100 dollars, reserving to the owner, Ouachita Valley Camp No. 10, the right to apply for a rehearing.

The Ouachita Valley Camp moved for a rehearing, which was granted, but restricted solely to the consideration of the

question as to the amount to be deposited, the decree being as follows:

"It is decreed:

"First: That a rehearing is hereby granted to Ouachita Valley Camp No. 10, Woodmen of the World, solely on the question whether it should deposit six hundred and ninety-eight and 57-100 dollars additional to the eleven hundred and nine and 40-100 dollars previously ordered deposited.

"Second: That the rehearing granted shall suspend execution of the judgment herein rendered in favor of plaintiff against the camp and in favor of the camp against the Union Indemnity Company only to the extent of a share of said six hundred and ninety-eight dollars in proportion to plaintiff's judgment herein and those rendered in favor of the plaintiff in the following numbered and entitled cases on the docket of this court, to-wit:

"No. 2302—Parlor City Lumber Company, Inc., vs. A. Delatte, et al.

"No. 2303—C. C. Bell vs. A. Delatte, et al.

"No. 2304—Monroe Hardware Co, Inc., vs. A. Delatte, et al."

Subsequently a rehearing appears to have been granted on the entire case by the court on its own motion, and the cause has again been submitted.

We are of the opinion this court was without power to have granted a rehearing upon the entire case, and that we must take notice of the limitation of our power. (In re Luckett & Hunter, 159 La.) And therefore the rehearing must be restricted solely to the consideration of the question as to whether the Ouachita Valley Camp shall make an additional deposit over and above the sum of eleven hundred and nine and 40-100 dollars, and that all other questions are foreclosed.

In considering this cause as between the Ouachita Valley Camp owner, and the Union Indemnity Company (surety on the contractor's bond), it appears the court must have viewed the situation as if this suit and suits Nos.: 2302, Parlor City Lumber Company, Inc., vs. A. Delatte, et al.; 2303, C. C. Bell vs. A. Delatte, et al; 2304, Monroe Hardware Company, Inc., vs. H. L. Thompson, et al., has been consolidated, and concluded that as between the Camp and the Indemnity Company the proceeding should be viewed as a concursus, holding the Camp bound to account for the contract price, or to be considered as having retained in its hands ten per cent of the contract price, less the amounts paid out with the consent of the Indemnity Company.

Considering the case as between the Camp and the Indemnity Company from this point of view, it appears the Camp contends the balance of the contract price remaining in its hands is six hundred and ninety-four and 53-100 dollars rather than eleven hundred and nine and 40-100 dollars as admitted in the call in warranty, which is arrived at by a comparison of the following statement:

Contract price ...........................$27,495.00
Deductions therefrom:
  Sliding doors.................$200.00
  Paint .........................  240.00
  Front door ...................  34.80
                                   ———— 474.80
  Net contract price ........................$27,020.20

Cash paid contractor on estimate:
  October 4, 1922............$ 2,959.00
  November 27, 1922......  6,000.00
  December 13, 1922........ 10,000.00
                           ———————— 21,950.00
  Reserved under contract............$ 5,070.20

Reserved under contract and paid out as follows, direct to material men and laborers:
A. F. Stovall, frt. storage..$  171.32

McGuire Sand & Gravel
  Co. ................................ 332.75
C. C. Bell, mill work........ 1000.00
Joe Bell, roofing ................ 800.00
J. J. Brennan, plumbing.... 200.00
J. J. Brennan, plumbing.... 300.00
Electric Constr. Co............ 200.00
Electric Constr. Co............ 50.00
Electric Constr. Co............ 100.00
Three toilet fixtures........ 73.00
                              ─────────  3,270.07
On hand at time of letter............$ 1,843.13

And paid out under instructions
    of surety company:
Electrical Appliance Co.....$ 250.00
E. C. Stewart, painting.... 24.00
J. J. Brennan, plumbing.... 255.00
J. G. Bell, roofing................ 411.60
                              ─────────
                                         940.60
                                        $902.53

And the testimony of Mr. Blackman, one of the officers of the Camp, which is as follows:

"Q. Mr. Blackman, it is alleged in the answer that there remains in the hands of the Ouachita Valley Camp $1109.40 after, the completion of the building. Will you please state how this balance is arrived at?

"A. At the time the building was completed we owed the contractor $2806.43 with the following deductions: Insurance $108.00, floor color $100.00, allowance for paint $240.00; plumbing fixtures not furnished $73.00; allowance front door $34.80 * * * and the items ordered paid by the insurance company leave a balance of eleven hundred and nine and 40-100 dollars."

The camp, being held to account for the contract price, or to show that the amounts deducted from the contract price were properly made, such as for insurance $108.00, floor color $100.00, allowance for paint $240.00, sliding doors $200.00, plumbing fixtures not furnished $73.00, and allowance for front doors $34.80, and amounts paid out under the heads of "Reserved under contract and paid out

as follows direct to material men and laborers" and "Paid out under instructions surety company" were properly paid, carried the burden of proof, and as there is no evidence establishing that the deductions from the contract price had been agreed upon as between the Camp and the contractor or that the item of one hundred and seven and 32-100 dollars paid A. F. Stovall, as shown in the statement, was for material for which the Camp was liable, or that the item of $100.00 to the Electrical Construction Company was paid, we are of the opinion that these items, which amount to the sum of one thousand and twenty-seven and 12-100 dollars, should be added to the amount of the six hundred and ninety-four and 53-100 dollars, making the balance of the contract price unaccounted for by the Camp seventeen hundred and twenty-twenty-one and 65-100 dollars, and deducting from this amount the sum of eleven hundred and nine and 40-100 dollars which the Camp has heretofore been ordered to deposit, leaves a balance of six hundred and twelve and 25-100 dollars which the Camp should deposit before being permitted to proceed against the surety company.

It is therefore ordered, adjudged and decreed that the original decree as modified on the application of the Union Indemnity Company for a rehearing be amended as follows:

Instead of defendant, Ouachita Valley Camp No. 10, Woodmen of the World, having the right to execute the judgment herein rendered against the warrantor on depositing $1109.40, it is decreed that it shall have that right only on depositing seventeen hundred and twenty-one and 65-100 dollars, out of which deposit shall be paid, pro rata, the judgment in favor

of the plaintiff in this suit and the judgments rendered in favor of the plaintiffs in the following suits in which the warrantor herein has been called in warranty (wherein judgments are rendered against it in favor of the Ouachita Valley Camp, namely:

No. 2302—Parlor City Lumber Company, Inc., vs. A. Delatte, et al.

No. 2303—C. C. Bell vs. A. Delatte, et al.

No 2304—Monroe Hardware Co., Inc., vs. H. L. Thompson, et al.

And that the decree, as thus amended, be and is made the judgment of this court.